LANG *v.* COUNTY OF INGHAM.

1. AUTOMOBILES — COUNTIES — HIGHWAYS — REPAIRS — NEGLIGENCE— EVIDENCE.

In action by motorist against county for injuries received in passing over depression in county highway beneath which county drain had been constructed so as to cross highway diagonally, evidence as to whether highway was out of reasonable repair, whether defendant was chargeable with notice of such condition and had a reasonable time in which to repair it or place suitable warnings for traveling public *held,* sufficient to present such matters for consideration by trier of the facts and justify finding for plaintiff thereon (1 Comp. Laws 1929, §§ 3996, 4223).

2. SAME—CONTRIBUTORY NEGLIGENCE—SPEED—EVIDENCE.

In action by motorist against county for injuries received when plaintiff drove over depression in highway where county drain had been constructed, evidence as to plaintiff's speed and whether his rate of speed constituted contributory negligence *held,* sufficient to render such matters factual issues and to afford justification for finding for plaintiff thereon by trial judge sitting without a jury.

3. DAMAGES—PERSONAL INJURIES—PERMANENT LOSS OF EARNING POWER—AUTOMOBILES—COUNTIES.

In motorist's action against county for injuries sustained as result of defect in highway, judgment for $20,583.20 *held,* not excessive under record showing first dorsal vertebra was crushed, paralysis of body from there downward, loss of control of bowels and urinary system, hospitalization for about a year and permanent loss of earning power.

Appeal from Ingham; Collingwood (Charles B.), J. Submitted June 5, 1936. (Docket No. 54, Calendar No. 38,823.) Decided October 5, 1936.

Case by Andrew G. Lang against County of Ingham, a municipal corporation, for personal injuries sustained in an automobile accident. Judgment for plaintiff. Defendant appeals. Affirmed.

*George H. McArthur* and *Kelley & Seelye,* for plaintiff.

*Dan D. McCullough,* Prosecuting Attorney, and *Hayden, Hubbard & Rathbun,* for defendant.

NORTH, C. J. Plaintiff brought this suit to recover for his personal injuries, expense of medical care and treatment, and permanent loss of earning capacity alleged to have resulted from an automobile accident which happened on the afternoon of May 29, 1930, on the Mason-Howell road in Ingham county, at a point about six miles east of Mason. On trial without a jury, plaintiff had judgment for $20,583.20. Defendant has appealed.

The Mason-Howell road extends east and west and is a part of the Ingham county road system. A county drain in process of construction, extending in a northeasterly and southwesterly direction crossed the highway at about a 45-degree angle at the point of accident. To avoid total obstruction of the traffic, which was rather heavy, the drain was first constructed on the northerly half of the highway and then on the southerly half. A trench about two feet wide and seven feet deep was dug, the tile laid, and the trench refilled, tamped, and rounded up on the northerly half of the highway on May 22, 1930. On the following day the drain on the southerly half of the highway was constructed in like manner. Plaintiff was traveling in an easterly direction on the south side of the road, and hence this controversy involves more directly the condition of

that side of the traveled portion of the highway, which was graveled to a total width of about 16 feet and had a four-foot berm or shoulder on either side. On the day of the accident plaintiff left Mason in the early afternoon intending to drive to Howell. He had traveled this road many times and was familiar with its general condition but he did not know the drain was being laid across the highway. He testified that as he approached the place where the drain crossed the road he was driving around 40 miles per hour; that he observed there was a change in the color of the dirt across the road; and that from the time he made this observation "it was just a split second" before his automobile struck the depression in the road where the drain crossed. It is plaintiff's claim that in this short interim he removed his foot from the accelerator, but that as the car struck the depression his head was thrown against the windshield and his body against the wheel with such force that he was seriously injured and momentarily unconscious; that his foot must have dropped back on the accelerator and his auto proceeded at an increased rate of speed until it went into and across a ditch on the southerly side of the road, struck a wire fence, and turned over one or more times. The testimony as to where plaintiff's car left the traveled portion of the highway varies from 20 to upwards of 100 feet east of where the drain crossed. There is testimony from which it appears that the ditch at the side of the road through which plaintiff's car passed was about two feet deep and about four feet wide, and that the fence was approximately 20 feet south of this ditch.

The theory of plaintiff's case is that in connection with the construction of the drain across the highway defendant failed to keep the highway in a condi-

tion reasonably fit and safe for public travel (1 Comp. Laws 1929, §§ 3996, 4223); that defendant failed tò maintain near the point of the accident signs or warnings of the dangerous condition of the highway; and that defendant failed to properly supervise the construction of the drain across the highway.

There is testimony that at the time of the accident there was a depression where the drain crossed the highway from 2 to 12 inches deep. Autos passing were noticeably affected by the depression, causing them to rock from side to side and some machines veered to the north side of the road where the depression was not so deep. On the day of the accident an occupant of another automobile going west and on the north side of the road "was tossed to the top of the car" and stunned. Later in the day this party observed the condition of the road at this point and she testified the depression was 10 to 12 inches deep.

The drain was constructed by a contractor. He placed warning flags along the side of the highway about 100 feet distant from the drain crossing, but he had removed these warnings the day before this accident. The defendant employed a patrolman who went over this section of the road twice each day. Early on the day of this accident he had passed this particular point going in an easterly direction. It was his duty to observe the condition of the highway while operating a road grader. If the condition asserted by plaintiff existed, it was the duty of this patrolman to observe it and to take proper precautions to safeguard the traveling public. We quote the following from appellant's brief:

"Clyde Woodland, the patrolman, in the course of his duties, had both actual and constructive notice

of whatever existed at the place in question. He stated, however, on cross-examination by defendant, that he did everything as far as his best judgment called for, to keep this road in a reasonably safe condition of repair and fit for travel.''

This record contains ample testimony to present an issue of fact as to whether the highway was out of reasonable repair due to defendant's neglect of its statutory duty, and as to whether defendant was chargeable with notice of such condition and had a reasonable time under the circumstances in which to repair the highway or at least provide warnings for the traveling public. The trial judge who saw and heard the witnesses found for plaintiff, and the record on this appeal would not justify reversal by this court of such finding.

The defense of contributory negligence is urged. Here also the record presents an issue of fact. Mainly this question of contributory negligence involves the rate of speed at which plaintiff was driving. He says approximately 40 miles per hour. An occupant of his car corroborates his testimony in this particular. On the other hand some of defendant's witnesses estimate plaintiff's speed as high as 60 to 80 miles per hour. There is also much in the record as to the course of plaintiff's automobile after it passed over the depression in the road, the distance it went, the obstacles it encountered, the number of times it turned over, etc. But in this connection plaintiff testified that as he approached the depression in the road and observed the darker color of the dirt he was not able to tell whether it was a ditch or a ridge, that he struck it instantly, that the impact threw him forward, his head striking the windshield, that he was then seriously physically injured, and became temporarily unconscious

and in effect was paralyzed, that his foot fell upon the accelerator and from then on he was unable to control the speed or course of his car. What the actual rate of speed of plaintiff's car was as he approached the depression in the highway, and whether his rate of speed constituted contributory negligence was clearly a factual issue; and under the record here presented we fail to find justification for disagreeing with the trial judge's determination. *Jacoby* v. *Schafsnitz,* 270 Mich. 515; *Paton* v. *Stealy,* 272 Mich. 57.

It would serve no purpose to detail the severe injuries suffered by plaintiff which have resulted in his permanent loss of earning power. We content ourselves with quoting briefly from the finding of the trial judge:

"The evidence shows that the plaintiff's first dorsal vertebra was crushed, resulting in paralysis of the body from that point downward. The result of this condition is that he has no control of his bowels or urinary system. He was hospitalized for about a year, receiving apparently the best medical and surgical treatment. The result is that for five years he has been unable to perform any kind of labor. The evidence shows that this condition is permanent."

The items constituting the damages awarded were detailed by the trial judge as follows:

| | |
|---|---|
| Hospitalization, medical care, etc. | $4,583.20 |
| Loss of earnings prior to trial | 5,000.00 |
| Present worth of future loss of earnings | 6,000.00 |
| Pain and suffering | 5,000.00 |
| Total | $20,583.20 |

Careful review of this record satisfies us that the damages awarded were not excessive; and we are not in accord with appellant's contention that the

judgment entered in the circuit court was against the great weight of the evidence, or that it was contrary to law.

The judgment entered in the circuit court is affirmed, with costs to appellee.

FEAD, WIEST, BUTZEL, BUSHNELL, SHARPE, and TOY, JJ., concurred. POTTER, J., did not sit.